UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARCEL T. JACKSON,

          Plaintiff,

v.                                                          Case No. 20-CV-1911

CHANTELL JEWELL,

          Defendant.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

Plaintiff Marcel T. Jackson, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. (Docket # 2.) Jackson was allowed to proceed on a conditions of confinement claim alleging that Milwaukee County House of Corrections (HOC) failed to implement protocols for preventing the spread of COVID-19.

The defendant, Superintendent of the HOC Chantell Jewell, has moved for summary judgment on the basis that Jackson failed to exhaust his administrative remedies. (Docket # 18.) The parties have consented to the jurisdiction of a magistrate judge. (Dockets # 7, 11.) For the reasons stated below, I will grant Jewell's motion for summary judgment on exhaustion grounds and dismiss the case without prejudice.

## FACTS

Marcel T. Jackson was incarcerated at the Milwaukee County Jail from January 30, 2020, through March 19, 2020. (Docket # 19, ¶ 14.) He was then transferred to the HOC and was incarcerated there from March 19, 2020, through May 28, 2020. (*Id.*, ¶ 15.)

Jackson's underlying allegation is that HOC staff did not put adequate cleaning and protective measures in place to prevent the spread of the novel coronavirus including giving inmates masks and adequate cleaning supplies. (Docket # 1 at 2–3.) Jackson alleged in his complaint that between March 26 and April 1, 2020, he filed several grievances, both electronically and on paper "addressing social, cleaning/sanitary, protective and preventative concerns," which were ignored. (*Id.* at 2.) He then tested positive for COVID-19 on April 22, 2020. (Docket # 19, ¶ 32.)

The process for filing a grievance in early 2020 at the HOC was contained in the Inmate Handbook, and inmates are given a copy upon booking into the HOC. (Docket # 19, ¶¶ 3–4.) The Handbook is also posted on the walls within the resident dorms. (*Id.*, ¶ 4.)

The process is as follows: An inmate must submit a grievance form in one of two ways—either electronically by using an Aramark kiosk in the dayroom on the housing unit or on a paper form by submitting them in a designated lock box. (*Id.*, ¶¶ 5–8.) If an inmate wishes to submit a paper grievance, they can obtain a form from the dorm corrections officer. (*Id.*, ¶ 8.) Electronically submitted grievances are sent to a reviewing corrections officer or lieutenant. (*Id.*, ¶ 7.) Paper grievances are collected nightly and given to staff responsible for reviewing grievances. (*Id.*, ¶ 8.) A reviewing officer must respond in writing to the inmate within 10 days of receiving the grievance. (*Id.*, ¶ 9.) If an inmate wishes to appeal a response to their grievance, they must indicate their desire to appeal either on the kiosk or on the paper response within three days of receiving the response. (*Id.*, ¶ 11–12.) Appeals are reviewed by the HOC Shift Captain. (*Id.*, ¶ 13.) An inmate fully exhausts his administrative remedies once he goes through the appeals process. (*Id.*)

Jackson states he "filed a litany of grievances, both paper and digital/kiosk, as well as verbal." (Docket # 26 at 3.) However, Jackson does not provide copies of the grievances he submitted, any details of exactly how many grievances he submitted, the approximate dates he submitted the grievances, the details about specific complaints contained in each grievance, or copies of the replies he received.

Jewell asserts that "HOC records reveal that Jackson did not submit any electronic kiosk grievances concerning the HOC's 'social, cleaning/sanitary, protective and preventative concerns' while incarcerated at the HOC." (Docket # 19, ¶ 21.) There are also no records of Jackson filing any paper grievances while at the HOC. (*Id.*, ¶ 22.) Jewell provides a list of grievances that Jackson did file while housed at the HOC, which shows that Jackson filed only one grievance electronically on May 22, 2020, asking why his HomeWav access was blocked. (Docket # 21-3.) There is also a record of a paper grievance that Jackson submitted on March 18, 2020, while housed at the Milwaukee County Jail that discusses inadequate sanitary measures at the Jail in light of the burgeoning COVID-19 pandemic. (Docket # 21-4.) Jewell points out that while both the HOC and the Milwaukee County Jail are county facilities, they are operated by two different entities—the Jail is operated by the Milwaukee County Sheriff's Office whereas the HOC is operated by the Superintendent (Jewell). (Docket # 19, ¶¶ 26–27.)

Jackson disputes Jewell's assertion that he did not file any grievances related to COVID-19, stating "[t]here is clearly fraud and intentional misrepresentation in the defendants [*sic*] depiction of events." (Docket # 26 at 1.) He claims Jewell "falsified evidence." (*Id.*)

3

# SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

# ANALYSIS

Jackson's case is governed by the Prison Litigation Reform Act which states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court, and it produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). An inmate can show that a grievance process may be unavailable where "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking,

5

incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016)).

Jackson presents no specific evidence to rebut Jewell's assertion that he did not file any grievances related to his underlying claims, thus he does not establish that there is a genuine issue of material fact that he exhausted his administrative remedies. "Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)).

Jackson does not provide anything specific about the "litany of grievances" he supposedly filed. He does not provide the court with any information about approximately how many grievances he filed, approximately when he filed each grievance, and how he filed each grievance—*i.e.*, specifying whether each grievance was filed via the kiosk or paper form.

Per the grievance process, Jackson should have received written replies to each grievance that he could have included with his response materials. Jackson, however, does not mention the written replies, including explaining whether he never received them, which would have possibly opened up an unavailability argument. There is also nothing else on the record to suggest that the process was unavailable to Jackson. Indeed, the undisputed evidence demonstrates Jackson was familiar with and utilized the process because he filed a

6

grievance unrelated to COVID-19 in May 2020. At most, Jackson's defense is that Jewell fraudulently altered the records to omit all of his grievances, but he gives no evidence for these suspicions. Bald assertions that are not bolstered by more specific evidence are insufficient to create a genuine issue of material fact. *Drake v. Minn Mining & Mfg Co.*, 134 F.3d 878, 887 (7th Cir. 1998). Accordingly, I must grant summary judgment on exhaustion grounds in Jewell's favor.

## CONCLUSION

There is no genuine issue of material fact that Jackson failed to exhaust his administrative remedies as it pertains to the HOC's implementation of COVID-19 protocols. Summary judgment is granted in Jewell's favor and the case is dismissed without prejudice. It is dismissed without prejudice because when a plaintiff brings a lawsuit prior to exhausting his administrative remedies, the suit is premature. *Chambers v. Sood*, 959 F.3d 979, 984 (7th Cir. 2020). "A premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit after fully exhausting his administrative remedies." *Id.* (citing *Ford v. Johnson*, 362 F.3d 395, 398–400 (7th Cir. 2004)).

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Jewell's motion for summary judgment (Docket # 18) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED without prejudice**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate

Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 2nd day of February, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge